**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division**

**DR. PASTOR LEON KEITH McCRAY, SR.,**

    **Plaintiff,**

**v.**                                  **Case No.**  5:22-cv-00029

**VICTOR A. GREEN,**

    **Serve: 109 West Court Street
        Woodstock, VA 22664,**

**CHRISTOPHER A. JAMES,**                      **<u>JURY TRIAL DEMANDED</u>**

    **Serve: 1033 Locust Street
        Stephens City, VA 22655,**

**and**

**WESLEY M. DELLINGER,**

    **Serve: 109 West Court Street
        Woodstock, VA 22664,**

    **Defendants.**

<u>**COMPLAINT**</u>

COMES NOW the Plaintiff, Dr. Pastor Leon Keith McCray, Sr., through counsel, and brings this action for deprivation of civil rights under the Civil Rights Act, pursuant to 42 U.S.C. § 1983, seeking redress for the deprivation under color of state law of rights, privileges and immunities secured to him by the Fourth and Fourteenth Amendments to the United States Constitution, and under state law for malicious prosecution. Plaintiff seeks compensatory and punitive damages, as well as attorney's fees and costs. In support of his claim, Plaintiff states as follows:

## JURISDICTION AND VENUE

1.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, and its pendent jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

2.  Venue is proper in this District under 28 U.S.C. § 1391(b), as the acts and omissions giving rise to the unconstitutional practices alleged herein arose in the Harrisonburg Division of the Western District of Virginia.

## PARTIES

3.  Plaintiff Dr. Pastor Leon Keith McCray, Sr. ("Pastor McCray") is a citizen of the United States and resides in Daytona Beach, Florida.  At the time of the events set forth herein, Pastor McCray resided in Shenandoah County, Virginia.  Pastor McCray is a Black gentleman.

4.  Defendant Victor A. Green was, at all relevant times, a Deputy with the Shenandoah County Sheriff's Office.  Defendant Green provided false and incomplete information to a magistrate and procured an arrest warrant for Pastor McCray, despite his knowledge that there was no probable cause to arrest Pastor McCray, thereby setting in motion a prosecution which terminated in Pastor McCray's favor.  Defendant Green is sued in his individual capacity.

5.  Defendant Christopher A. James was, at all relevant times, a Sergeant with the Shenandoah County Sheriff's Office.  Defendant James instructed Defendant Green to procure an arrest warrant for Pastor McCray, despite his knowledge that there was no probable cause to arrest Pastor McCray, thereby setting in motion a prosecution which terminated in Pastor McCray's favor.  Defendant James is sued in his individual capacity.

6.  Defendant Wesley M. Dellinger was, at all relevant times, a Captain with the Shenandoah County Sheriff's Office.  Defendant Dellinger instructed Defendant Green to

procure an arrest warrant for Pastor McCray, despite his knowledge that there was no probable

cause to arrest Pastor McCray, thereby setting in motion a prosecution which terminated in

Pastor McCray's favor.  Defendant Dellinger is sued in his individual capacity.

 7.  All of the actions, omissions and conduct of Defendants complained of were

undertaken by Defendants under color of state law.  Defendants' conduct represents a reckless or

callous indifference to the Plaintiff's federally protected rights and furthermore constitutes

intentional discrimination against Plaintiff based on his race.

## FACTS

 8.  Pastor McCray is the pastor of Lighthouse Church & Marketplace Ministries

International in Woodstock, Virginia.  He is also a decorated retired twenty-four-year Air Force

Master Sergeant, a retired Federal Civil Servant, a business owner, property owner, father,

grandfather of twelve grandchildren, and a community leader.

 9.  On June 1, 2020, Pastor McCray approached his rental property at 114 Printz St.,

Edinburg, Virginia, which is in Shenandoah County, to conduct business and observed

Christopher Sharp ("Sharp") and Amanda Salyers dragging a refrigerator through his parking lot

towards Pastor McCray's dumpster in order to dispose of the refrigerator.

 10.  At all relevant times, the Salyers family resided at 108 Printz Street.  Pastor McCray

had consistently experienced problems with residents of neighboring apartments and houses

using his dumpster without authorization.

 11.  Pastor McCray informed Sharp and Amanda Salyers that they were trespassing, that

they could not dump the refrigerator on his property, and that they needed to leave.

3

12.  Sharp and Amanda Salyers became irate and began verbally harassing Pastor McCray and threatening him with physical violence.

13.  Sharp left the property and ran to 108 Printz St. to obtain reinforcements.  He then returned to Pastor McCray's property with Farrah Salyers, Donny Salyers, and Dennis Salyers. The Salyers and Sharp continued verbally harassing, taunting, threatening physical violence, and hurling racial slurs at Pastor McCray, who is Black.  The Salyers and Sharp, who were all White, also threatened to kill Pastor McCray and began to surround him so that he could not leave and could not get away from the angry, violent mob.

14.  Pastor McCray continued to instruct all five individuals that they were trespassing and that they needed to get off his property.

15.  However, the Salyers and Sharp refused to leave, and instead surrounded Pastor McCray and continued their racial slurs and threats of violence.

16.  Donny Salyers ran full speed up to Pastor McCray, bumping his chest against Pastor McCray's chest and his nose against Pastor McCray's nose while threatening to kill Pastor McCray.  Dennis Salyers bumped Pastor McCray from the back.  Both Donny and Dennis Salyers physically assaulted Pastor McCray during the confrontation.

17.  Dennis Salyers had circled around behind Pastor McCray, while the other Salyers and Sharp flanked him on both sides and in front, pressing into Pastor McCray's face and nose and bumping him from the back.  All the while, Donny Salyers and Dennis Salyers, the two largest males in the group, continued threatening to kill Pastor McCray, and one of them had taken off his shirt, in preparation for committing additional acts of physical violence against Pastor McCray.

4

18.  The mob continued to verbally and physically assault Pastor McCray, using racially offensive language and threatening to kill Pastor McCray.

19.  The racially charged statements and threats included, but are not limited to:

a.  "Look you black ass mother fucking nigger I'll kill your black ass."

b.  "Nigger I'll kill you."

c.  "Your mother fucking Black Lives Matter Bull Shit doesn't matter in this county or to me either."

d.  "We don't give a damn about your black life."

20.  These threatening comments, along with the physical assaults, the refusal of the Salyers and Sharp to leave his property after he repeatedly requested that they do so, and the verbal threats on his life, led Pastor McCray to fear for his life.

21.  The mob continued its attack and intensified their comments, racial slurs, and blatant threats to Pastor McCray's life.

22.  As a result of the continuing and escalating assaults, violence, and threats, Pastor McCray was compelled to grab his legally concealed weapon and point it to the ground to stop the mob from killing him on his own property.

23.  Once Pastor McCray took out his gun, which he kept pointed to the ground, the mob backed away, and Pastor McCray was able to retrieve his cell phone and call 911 for help.  Law enforcement was dispatched to the scene at 11:28 a.m.

24.  Several other phone calls were placed to 911 by neighbors, the Salyers, and Sharp.

25.  At least ten law enforcement officers then arrived on the scene, including Defendants Green, James, and Dellinger from the Shenandoah County Sheriff's Office.  Even after law

enforcement arrived, the mob continued to direct taunts, threats, and racial slurs at Pastor McCray. The law enforcement officers did not prevent or stop the mob from continuing these verbal taunts, threats, and racial slurs. The law enforcement officers heard the threats and taunts and observed firsthand the angry, violent behavior of the Salyers and Sharp.

26. When law enforcement arrived, they were met in the street by Donny and Dennis Salyers, who were yelling and screaming at the officers as well as at Pastor McCray. Pastor McCray was standing alone in the parking lot of his apartment building at 114 Printz Street, while the Salyers and Sharp kept moving down the street towards Pastor McCray from their house at 108 Printz Street.

27. Throughout the exchange with law enforcement officers, the Salyers and Sharp disregarded the instructions of officers, disrespected the officers, and continued to curse and threaten Pastor McCray. The Salyers and Sharp were never threatened with arrest by law enforcement, however, but instead were told to "calm down" and "get back to their house," and were assured by law enforcement officers that if someone had pulled a gun on them, the law enforcement officers would be upset, too. Law enforcement told the Salyers and Sharp that they should calm down because the last thing the Salyers and Sharp needed was to get in trouble themselves.

28. The threats, taunts, and slurs used by the Salyers and Sharp and directed to Pastor McCray in the presence of the law enforcement officers, included, but are not limited to:

a. "Big man wanna get up in a woman's face. He come out here getting stupid and then pulls out that fucking gun. I'll stuff that goddamn gun up your ass, this ain't no goddamn D.C.,

no goddamn Black Lives Matter, it's bullshit, get the fuck out of here with that shit, wrong county mother fucker."

    b.  "I'll stuff that mother fucker up your ass.  They won't save you or stop me."

    c.  "I'm fucking mad, this is bullshit, I've been taking care of this property for over four fucking years and this piece of shit comes up here to collect rent every once in a while."

    d.  "Fuck you big boy, that would be a dead mother fucker."

    e.  "Pussy ass mother fucker."

    f.  "I want to beat the crap out of him."

    g.  "He comes up once a fucking month, grabs money, goddamn slumlord, takes money from those people, roaches, shit runs over from his place, drives up in his suburban."

    h.  "Mother fucker pulled a gun on me, shit I'll stuff that gun up your ass and push you off the cliff you pussy ass mother fucker."

    i.  "This is not going to work out the right way, especially now with all these protests going on, a black man pulls a gun, but if my white ass just pulled a gun on him, all sorts of things would happen."

29.  When asked for identification by law enforcement officers, Donny Salyers responded "I don't have a fucking ID – you know exactly who I am, you are here enough, I am the same guy every time you all been here."

30.  When asked how long they had lived there, Donny said, "3-4 years, you all should know because you are here all the time.  The police reports should tell you how long I have lived here."

31.    During these interactions with the Salyers and Sharp, law enforcement officers seemed to sympathize with the Salyers, nodding in agreement with them and saying things like, "I know," "if someone pulled a gun on me, I'd be mad too," "you have every right to be upset," "I hear you," "I don't want you guys getting into more trouble," and "it is not the cleanest place" (referring to Pastor McCray's apartment building).

32.    While they were talking to the law enforcement officers, the Salyers were also yelling at and threatening a woman who lives in the apartment building owned by Pastor McCray.  The comments directed to her by the Salyers included, but are not limited to:  "don't talk shit while you were inside woman"; "bullshit bitch, you keep running that mouth and I will kick your fucking door in"; "you won't make it somewhere else, bitch"; "you saw everything but didn't do anything until the last fucking minute, bitch"; "I'm going to beat your fucking ass bitch"; "are you sucking his fucking dick, what's up."  No officer ever attempted to have the Salyers stop hurling these offensive comments toward the witness.

33.    Both Farrah and Amanda Salyers started towards the woman in the apartment building, but law enforcement officers had to restrain them.

34.    Law enforcement officers also had to restrain Donny and Dennis Salyers from advancing on Pastor McCray on several occasions.

35.    Throughout most of the encounter with law enforcement, Pastor McCray was left standing alone in the parking lot of his apartment building.  Defendant Green had spoken briefly to Pastor McCray upon his arrival at the scene and took possession of the firearm.  Then, Defendant Green and Deputy Racine stood near Pastor McCray for a time.  They did not attempt to interview any witnesses or engage in further discussion with Pastor McCray.

36. After standing with Pastor McCray for a short time, Defendant Green announced that he was going up the block to speak to the other officers. Defendant Green went over to stand in the street with Defendant Dellinger for approximately five minutes, observing first-hand the vicious, abusive, profane, and threatening statements hurled by the Salyers and Sharp at Pastor McCray and one of his female tenants. None of the Defendants made any attempt to stop the Salyers and Sharp from threatening Pastor McCray and his tenant.

37. Deputy Bollinger, who had left prior discussions with the Salyers to don his PPE, approached Pastor McCray and told Pastor McCray that they deal with the Salyers all the time, that it was good that Pastor McCray called law enforcement, and then asked if Pastor McCray was doing all right. Pastor McCray responded, "I cannot get these guys to stop trespassing on my property," and described the property he owned to the officer. The officer responded, "ok," then walked over to Defendant James and went back to the Salyers and Sharp group.

38. Once Deputy Bollinger had returned with his PPE, Defendants Green, Dellinger, and James met in the middle of the street to discuss the situation. The officers, including but not limited to Defendant Dellinger, stated that it would be brandishing if the gun was out of Pastor McCray's pocket and the Salyers and Sharp felt threatened, but that they might feel differently if the Salyers had committed an act of violence against Pastor McCray. The officers determined that they would "just serve a summons [for brandishing] and let the courts work this out." They then determined that Pastor McCray should be taken before the magistrate because it would be "bad" if they did not do something, *i.e.*, if they left without making an arrest. Defendant Green returned to Pastor McCray's location.

39. Deputy Bollinger then met with Defendant Dellinger in the middle of the street to discuss the situation. Bollinger told Defendant Dellinger that Pastor McCray was the landlord, that the Salyers had put a mattress or something on his property, and that Pastor McCray was upset. They also noted that they frequently had to go to the area for issues involving the Salyers and that the Salyers were on Pastor McCray's property all the time. Bollinger also noted that Amanda Salyers was "very mouthy." They also were aware that Pastor McCray wanted them to leave and stay off his property.

40. Defendant Green then arrested Pastor McCray and placed him in the Sheriff's office vehicle.

41. Defendant James, after observing that Pastor McCray had been put in the vehicle, began walking towards the vehicle and Defendant Green. Defendant Green met Defendant James part way and stated that he did not feel comfortable with arresting Pastor McCray, because he had been surrounded by the Salyers who frequently posed problems for law enforcement. Defendant James stated, however, that they would proceed with the arrest and ostensibly enforcing the code section. The code section Defendant James referred to, however, Virginia Code § 18.2-282, which sets forth the crime of brandishing a firearm, specifically states that it does not apply to "any person engaged in excusable or justifiable self-defense."

42. Defendant Green informed Defendant James that they needed to be sure to get written statements from the two witnesses standing in the breezeway of the second floor of the apartment building because they backed up what Pastor McCray said – that the Salyers and Sharp were getting in his face. Defendant James said, "that is good, we are not determining guilt or innocence here."

10

43.   Defendants James and Dellinger instructed Defendant Green to arrest Pastor McCray, and Defendant Green ultimately did so, notwithstanding his prior objections.

44.   At the point the decision was made to arrest Pastor McCray, law enforcement officers knew that the Salyers and Sharp had threatened Pastor McCray's life, that the Salyers had approached Pastor McCray aggressively, had surrounded him, and had made physical contact with him by bumping into him.  They further knew that witnesses supported Pastor McCray's account of what had happened.

45.   Barbara Strong, who made two of the 911 calls and observed the entire incident from across the street, called back to 911 while the officers were still there, and told the dispatcher to be sure to have the deputies interview her before they left.  She made this call at 11:48:49 a.m. However, the law enforcement officers did not talk to her prior to arresting Pastor McCray.  Ms. Strong's written statement was not taken until several days after the incident.  In her written statement, Ms. Strong stated that the Salyers and Sharp had made physical contact with Pastor McCray prior to his taking out the firearm.  Despite her call to 911, law enforcement officers did not take a statement from her prior to arresting Pastor McCray.

46.   The officers who arrived at the scene did not conduct sufficient interviews of any of the witnesses who observed the altercation.  There were numerous witnesses, including people in the apartment building, Barbara Strong across the street, and the Salyers' next-door neighbor who continued to try and deescalate the situation.  Yet, the officers did not properly investigate what had transpired, although they were aware of the Salyers' and Sharp's threats and racial slurs.

47. Despite Pastor McCray's statement to law enforcement that the Salyers had assaulted him, which would have been corroborated by the witnesses, law enforcement officers spent almost all of their time with the Salyers and Sharp, rather than verifying that what Pastor McCray had said was true. Furthermore, law enforcement officers knew that the Salyers had regular encounters with law enforcement for their unruly behavior. Defendant Dellinger had gone to school with Donny Salyers and was quite familiar with Donny's aggressive and unruly behaviors. Nevertheless, they made no attempt to properly investigate Pastor McCray's version of the events.

48. Rather, at 11:50 a.m., Defendant Green placed Pastor McCray in custody for a violation of Virginia Code § 18.2-282, brandishing a firearm. He did this at the direction of Defendants James and Dellinger. Despite the fact that the Salyers and Sharp were continuing their threats and racial slurs even after law enforcement officers arrived, Pastor McCray was the only individual who was handcuffed and forced to ride in a Shenandoah County Sheriff's Office vehicle. This was the case even though Virginia Code § 18.2-282 has an explicit exception for a person engaged in excusable or justifiable self-defense.

49. Defendant James approached Pastor McCray while he was seated in the law enforcement vehicle. Pastor McCray told James that they had surrounded him like a mob, and no one had addressed that. James informed Pastor McCray that he could address that with Defendant Green and that once the arrest was taken care of, then Green could take Pastor McCray's report. Pastor McCray noted that one of the ten officers present should be able to do this. In response, Defendant James made the following statements to Pastor McCray:

> We can only do one thing at a time, the reason we are addressing this portion at this time is because it involves a firearm, we do not have a lot of leeway. We are not saying you

12

are guilty, all we are saying is that a firearm is brandished.  A judge determines guilt or innocence.  <u>I am not disputing the facts of the case, I don't see this going anywhere once a judge sees it.</u>  The only reason we have to arrest you is because the code says this is what we must do if a firearm is brandished.  <u>I am not minimizing the way you feel, when you communicate to the judge that you felt threatened and you were in danger.</u>

(Emphasis added).  Pastor McCray pointed out to Defendant James that once law enforcement officers arrived, the Salyers were still threatening to kill him, and Defendant James responded that their statements were protected by the First Amendment.  Defendant James continued:

<u>We are not saying you are guilty of something</u>, we just have to follow the code section, the code section says we must do this.  <u>No one is saying you are guilty of something</u>, the only person who can do that is the judge.  We have to get all of this other stuff out of the way, and we have to say a firearm was brandished, once this is all done, you can give Green the other information and he will help you address those issues.  I know this is frustrating and not what you want to hear.  I would shake your hand, but I don't know if you feel comfortable shaking hands.

(Emphasis added).

50.  Several law enforcement officers stood and waved tauntingly to him as he was taken away in the Sheriff's Office vehicle.  Likewise, the Salyers and Sharp continued with their verbal abuse against Pastor McCray as he was handcuffed, then stood smiling and waving at Pastor McCray along with the deputies as Pastor McCray was taken down the road in the Sheriff's Office vehicle.

51.  Pastor McCray asked Defendant Green for help in filing charges against the Salyers and Sharp, but Deputy Green refused to assist Pastor McCray, and stated that right now Deputy Green was taking Pastor McCray before a magistrate and charging him with brandishing a firearm.

13

52.  Defendants Green, James, Dellinger, and the other deputies and officers present refused to consider Pastor McCray's recounting of what had happened to him and what had led him to take his gun, pointed down, out of his pocket, and call 911 for assistance.

53.  Defendants Green, James, and Dellinger knew that Farrah Salyers, Donny Salyers, Dennis Salyers, and Amanda Salyers (a/k/a Amanda Polk) had criminal and traffic records in Shenandoah County, Virginia.  For instance, Farrah Salyers had previously been charged with abusive language and trespass.  Donny Salyers had previously been charged with abduction by force/intimidation, malicious shooting at a car or train, shooting in a public place, assault, and trespass.  Dennis Salyers had previously been charged with assault and battery, trespass, and disorderly conduct.  Amanda Salyers (a/k/a Amanda Polk) had been charged with making a false report/summons to law enforcement.  The Shenandoah County Sheriff's Office was regularly called to the Salyers' home.  Despite this knowledge, Defendants Green, James, Dellinger and other law enforcement officers refused to consider Pastor McCray's explanation of what had happened, refused to interview the witnesses who saw what had happened, and refused to assist Pastor McCray in taking out criminal charges against the Salyers and Sharp.

54.  Despite their knowledge of the Salyers' and Sharp's criminal records, not one of the responding law enforcement officers, including Defendants Green, James and Dellinger, asked Pastor McCray to provide a detailed statement of the incident.  In fact, Defendant James told Pastor McCray that the Salyers and Sharp had a First Amendment right to say anything they wanted, so they had done nothing wrong.

55.  Deputy Green, at the direction of Defendants James and Dellinger, prepared a criminal complaint and presented it to Magistrate Leilani Monahan at 12:53 p.m., seeking an

arrest warrant for violation of Virginia Code § 18.2-282 – brandishing a firearm.  Defendant

Green outlined the following facts in support of the request:

> On 06/01/20 at 1128 hours, Deputy V.A. Green was dispatched to 110 Printz ST
> Edinburg for a disturbance involving a handgun.  Green arrived on scene and spoke with
> Leon Keith Mccray the landlord of the Prinz street address.  Mccray stated he was
> approached by three males and two females.  Mccray stated the five individuals
> surrounded him verbally threating [sic] him.  Mccray stated he retrieved his handgun
> from his pocket due to feeling threatened for his life.

56.  Defendant Green omitted the following material facts in his Criminal Complaint:

a.  Four of the five individuals who surrounded Pastor McCray had criminal records in

Shenandoah County and were known to law enforcement.

b.  The five individuals continued threatening Pastor McCray, and using racial slurs, even

after law enforcement arrived.

c.  The officers observed the individuals threaten physical violence against a woman who

had witnessed the events;

d.  The officers had to restrain the individuals from heading back to Pastor McCray's

property and assaulting Pastor McCray and the female witness;

e.  The five individuals were trespassing on Pastor McCray's property; Pastor McCray

had repeatedly asked them to leave and they refused to do so.

f.  Pastor McCray had been physically attacked by the mob on his own property.

g.  The five individuals had threatened, assaulted, and hurled racial insults and slurs at

Pastor McCray.

h.  The five individuals had specifically threatened to kill Pastor McCray.

i.  Pastor McCray legally possessed the handgun in question.

j.  Pastor McCray himself had placed the call to 911 because he feared for his life.

57. Defendant Green, at the direction of Defendants James and Dellinger, presented the criminal complaint to the magistrate. Pastor McCray was not permitted to make any statements to the magistrate. The magistrate issued an arrest warrant for Pastor McCray for brandishing a firearm at 1:01 p.m. on June 1, 2020. Defendant Green served the warrant upon Pastor McCray at 1:03 p.m. on June 1, 2020.

58. At 1:12 p.m. on June 1, 2020, after meeting with the magistrate and serving the arrest warrant upon him, Defendant Green finally permitted Pastor McCray to give a Voluntary Statement. In the Voluntary Statement, Pastor McCray outlined exactly what had happened, beginning with the attempted dumping of the refrigerator on his property, the trespassing, the five individuals comprising the mob surrounding him, the verbal threats and physical assaults, the full speed chest and nose bump, the threats to kill Pastor McCray, and finally, Pastor McCray taking his gun out, pointed down, to get the mob off of him, then putting the gun back and calling the police to assist him. The statement was completed and signed by Deputy Green and Pastor McCray at 1:29 p.m. Despite the facts presented in this Voluntary Statement, Defendant Green did not attempt to withdraw the Criminal Complaint or the Arrest Warrant and did not attempt to inform the magistrate of these facts, which quite clearly revealed that Pastor McCray was defending himself on his own property and that there was no probable cause to charge Pastor McCray with brandishing a weapon.

59. On June 2, 2020, Pastor McCray directed a letter to Sheriff T. C. Carter, Sheriff of Shenandoah County, Virginia. The letter explained that Pastor McCray had called 911 from his property seeking help after being assaulted on his property, and he needed help filing assault and trespass charges against the persons who assaulted him. Pastor McCray outlined in the letter to

Sheriff Carter exactly what had happened the previous day – that he had asked trespassers to leave his property but was then surrounded by an angry mob of five individuals who physically assaulted him, threatened to kill him, and verbally attacked him.  Pastor McCray explained that he had grabbed his weapon and pointed it to the ground, in an attempt to stop the mob from killing him, which enabled Pastor McCray to call for help.  When the deputies and law enforcement officers arrived, Pastor McCray asked for assistance in filing charges, but instead, Pastor McCray himself was arrested and treated like a criminal.  Pastor McCray asked Sheriff Carter for assistance in filing charges against his attackers, and also for assistance in getting copies of his criminal complaint and any witnesses' statements.

60.  On June 3, 2020, Pastor McCray and his wife met with Sheriff Carter.  Pastor McCray related the facts to Sheriff Carter and requested that charges be placed against the persons who assaulted him.  Sheriff Carter informed Pastor McCray that Deputy Taylor had obtained some additional warrants on the other people.  Pastor McCray requested that the charge against him be dropped, and Sheriff Carter said he would speak to the Commonwealth's Attorney about the incident.

61.  On June 5, 2020, Sheriff Carter formally responded to Pastor McCray's request for copies of the criminal complaints, witness statements and other documents.  Sheriff Carter provided the criminal complaint, report and warrants including all persons charged at the incident.  In the cover letter, Sheriff Carter stated:

> As we discussed, your assessment of the deputy's probable cause, and my review of the matter are in agreement.  In other words, I would have made a different decision, had I been present at the scene.
>
> ***

As I explained in our meeting, I would notify the Commonwealth's Attorney. I have met with the Commonwealth's Attorney, requested that she review your position, and I have told her that all the information that I have indicates to me, that you were defending yourself, and that I agree with your reasoning.

***

Your assessment may be that they did not completely investigate the incident, which is one of the things you said to me in our initial meeting. Certainly, I agree, and I would have preferred that they did a more thorough job at the time of the incident.

62. Pastor McCray sent a letter to Sheriff Carter and Commonwealth's Attorney Amanda Wisely on June 10, 2020, once again explaining the incident, and asking that additional charges be taken out against the attackers, and that the charges against him be dropped and expunged.

63. The following charges were eventually lodged against the five attackers:

a. Farrah Salyers – Mob: Simple Assault or Battery, Abduction by Force/Intimidation, Assault: Hate Crime (misd.)

b. Donny Salyers – Assault and Battery, Mob: Simple Assault or Battery, Abduction by Force/Intimidation, Assault: Hate Crime (misd.)

c. Christopher Sharp – Trespass, Abduction by Force/Intimidation, Assault: Hate Crime, Mob: Simple Assault or Battery

d. Dennis Salyers – Assault and Battery, Mob: Simple Assault or Battery, Abduction by Force/Intimidation, Assault: Hate Crime (misd.)

e. Amanda Dawn Salyers – Trespass after forbidden, Mob: Simple Assault or Battery, Assault: Hate Crime (misd.)

64. On June 13, 2020, Sheriff Carter made the following statement in an NBC News Digital story:

18

It was apparent to me that the charge of brandishing was certainly not appropriate. Actually, as I told Mr. McCray, if I were faced with similar circumstances, I would probably have done the same thing [pulling out a firearm in self-defense].

65.    The charge against Pastor McCray was *nolle prossed* on June 19, 2020.

66.    On January 29, 2021, the Salyers and Sharp received suspended sentences on their charges.  Donny and Dennis Salyers were found guilty of the misdemeanor charges of mob assault and assault.  They were sentenced to a year in prison, all suspended, with two years of probation for each charge.  Amanda Salyers was sentenced to one year in prison after being found guilty of mob assault and six months in prison after being found guilty of trespassing.  Both sentences were suspended with two years of probation.  Farrah Salyers was found guilty of mob assault and sentenced to six months in prison, all suspended with one year of probation.  Christopher Sharp was found guilty of trespassing and sentenced to six months in prison, all suspended with a year of probation.  A charge of mob assault against Sharp was dismissed.  Hate crime charges against all the Salyers and Sharp were dismissed.  The felony abduction charges against all but Amanda Salyers were not certified to a grand jury.

67.    Pastor McCray was never contacted by the Commonwealth's Attorney prior to the hearing for the Salyers and Sharp, however.

68.    Pastor McCray felt, literally, like he had been lynched without being killed.  It was the most humiliating, dehumanizing, damning, and violating event of his life.  This event changed Pastor McCray's life forever.  He has sought ongoing counseling to cope with the trauma and the violent nightmares he has experienced since these tragic events.

69.    As a direct and proximate result of the acts and omissions of Defendants Green, James, and Dellinger in maliciously prosecuting Pastor McCray for a crime he did not commit,

Pastor McCray has endured the most humiliating, demeaning, dehumanizing, and violating event of his life.  He has suffered and will continue to suffer humiliation, embarrassment, injury to his reputation, psychological pain, physical pain, suffering, mental anguish, fear, death threats, trepidation, shock, attorney's fees, and other damages.

## CAUSES OF ACTION

## COUNT I - MALICIOUS PROSECUTION IN VIOLATION OF
## 42 U.S.C. § 1983

70.   Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

71.   By maliciously commencing, or causing to be commenced, criminal proceedings against Pastor McCray, by omitting critical information from the Criminal Complaint in order to obtain an arrest warrant, and by procuring an arrest warrant falsely charging Pastor McCray with brandishing a firearm, Defendants Green, James and Dellinger falsely and without probable cause charged Pastor McCray with a violation of the laws of the Commonwealth of Virginia and deprived Pastor McCray of rights, remedies, privileges and immunities guaranteed to every citizen of the United States, in violation of rights enforceable under 42 U.S.C. § 1983, including, without limitation, rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

72.   The commencement and continuation of the criminal proceedings against Pastor McCray was malicious and without probable cause.  All charges were terminated in Pastor McCray's favor.

73. The facts and circumstances within all three Defendants' knowledge were not sufficient to warrant a prudent person, or one of reasonable caution, into believing that Plaintiff had committed a criminal offense.

74. Defendant Green made false statements and omitted material facts in order to obtain the warrant. Defendants James and Dellinger instructed Defendant Green to obtain the warrant, knowing that it would contain false statements and omit material facts. Defendants Green, James and Dellinger failed to present all relevant probable cause evidence to the magistrate.

75. Defendants Green, James, and Dellinger knew, or should have known, that there was no probable cause to charge Pastor McCray with brandishing a firearm. Defendants Green, James, and Dellinger knew or should have known that:

a. Defendants Green, James, Dellinger and the other officers had failed to conduct a thorough investigation;

b. Pastor McCray had been verbally and physically threatened by the Salyers and Sharp;

c. Pastor McCray had been physically assaulted by the Salyers and Sharp;

d. The Salyers and Sharp had been hurling racial insults, threats, and death threats at Pastor McCray;

e. Pastor McCray was on his own property and the Salyers and Sharp had violently, viciously and without permission entered Pastor McCray's property, refused to leave Pastor McCray's property, formed a mob and surrounded Pastor McCray so that he was unable to escape, physically and verbally assaulted Pastor McCray, and threatened to kill Pastor McCray;

f. Pastor McCray took his legally obtained gun out of his pocket solely to protect himself from serious physical injury or death;

21

g.  Pastor McCray never pointed the gun at the Salyers or Sharp;

h.  Defendants Green, James and Dellinger failed to present such exculpatory and

mitigating information to the magistrate; and

i.  Despite this knowledge that there was no probable cause to arrest Pastor McCray,

Defendants Green, James, and Dellinger nevertheless instituted, or caused to be instituted,

criminal proceedings against Pastor McCray.

76.  Defendants Green, James and Dellinger acted under pretense and color of state law.

Defendants Green, James and Dellinger acted willfully, knowingly, and with the specific intent

to deprive Pastor McCray of his constitutional rights secured by 42 U.S.C. § 1983 and by the

Fourth and Fourteenth Amendments to the United States Constitution.

77.  The conduct of Defendants Green, James and Dellinger was willful, malicious,

oppressive and/or reckless, thereby entitling Plaintiff to an award of punitive damages.

78.  As a direct and proximate result of the acts and omissions of Defendants Green,

James, and Dellinger in maliciously prosecuting Pastor McCray for a crime he did not commit,

Pastor McCray has endured the most humiliating, demeaning, dehumanizing, and violating event

of his life.  He has suffered and will continue to suffer humiliation, embarrassment, injury to his

reputation, psychological pain, physical pain, suffering, mental anguish, fear, death threats,

trepidation, shock, attorney's fees, and other damages.

### COUNT II – EQUAL PROTECTION VIOLATION PURSUANT TO 42 U.S.C. § 1983

79.  Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

80.  The Equal Protection Clause of the Fourteenth Amendment to the United States

Constitution prohibits selective enforcement of the law based on race.

81.  The White individuals (the Salyers and Sharp) were not arrested and charged with any crime at the scene on June 1, 2020; however, Pastor McCray, a Black individual, was arrested by Defendants Green, James, and Dellinger and charged with brandishing a firearm. While the Salyers and Sharp were also at the scene and had trespassed on Pastor McCray's property and threatened and assaulted him, Defendants Green, James, and Dellinger chose to arrest only the Plaintiff, a Black man.  In fact, the Defendants stated that if they left without arresting Pastor McCray, then there would be more trouble from the Salyers and Sharp.

82.  Defendants' selective treatment was based on the impermissible consideration of race.  Defendants Green, James, and Dellinger arrested Pastor McCray because he is Black, and did not arrest the Salyers and Sharp, because they are White.  Defendants Green, James and Dellinger engaged in intentional discrimination against Pastor McCray because of his race.

83.  Plaintiff has been treated differently than other individuals present at the scene on June 1, 2020, by Defendants Green, James, and Dellinger and the other law enforcement officers, all on account of Plaintiff's race.

84.  There is no compelling interest to warrant such disparate treatment, nor is such treatment narrowly tailored to serve any compelling interest.

85.  By engaging in intentional discrimination against Plaintiff based on his race, Defendants Green, James, Dellinger and the other law enforcement officers caused Plaintiff to be deprived of his right to equal protection of the law as guaranteed by the Fourteenth Amendment to the United States Constitution.

86.  As a direct and proximate result of the acts and omissions of Defendants Green, James and Dellinger in maliciously prosecuting Pastor McCray for a crime he did not commit,

including on the basis of his race, Pastor McCray has endured the most humiliating, demeaning, dehumanizing, and violating event of his life.  He has suffered and will continue to suffer humiliation, embarrassment, injury to his reputation, psychological pain, physical pain, suffering, mental anguish, fear, death threats, trepidation, shock, attorney's fees, and other damages.

## COUNT III- COMMON LAW MALICIOUS PROSECUTION

87.  Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

88.  Defendants Green, James, and Dellinger maliciously commenced, or caused to be commenced, criminal proceedings against Plaintiff, by procuring and aiding in the procuring of an arrest warrant falsely charging Pastor McCray with brandishing a firearm.  Defendants Green, James, and Dellinger falsely and without probable cause charged Pastor McCray with a violation of the laws of the Commonwealth of Virginia.

89.  The commencement and continuation of the criminal proceedings against Pastor McCray was malicious and without probable cause.  Defendants Green, James, and Dellinger instigated, or caused to be instigated, and procured the prosecution falsely and maliciously with full knowledge that the charge was without probable cause.

90.  The facts and circumstances within Defendant Green's knowledge when he obtained the arrest warrant for Pastor McCray, and within the knowledge of Defendants James and Dellinger when they instructed Defendant Green to obtain the arrest warrant, were not sufficient to warrant a prudent man to believe that Pastor McCray had committed a crime.  The information relied upon by Defendants Green, James, and Dellinger in setting the prosecution on foot was incomplete and not reasonably trustworthy.  Defendants Green, James, and Dellinger chose to

ignore exculpatory and mitigating evidence, including that Pastor McCray was acting in

excusable and justifiable self-defense, and failed to perform a thorough investigation prior to

obtaining the arrest warrant for Pastor McCray.

91.  All charges were terminated in Plaintiff's favor.

92.  Defendants Green, James, and Dellinger were responsible for the malicious

prosecution of Pastor McCray in that the prosecution was set on foot by Defendants Green,

James, and Dellinger.

93. The conduct of Defendants Green, James, and Dellinger was willful, malicious,

oppressive and/or reckless, thereby entitling Plaintiff to an award of punitive damages.

94.  As a direct and proximate result of the acts and omissions of Defendants Green,

James, and Dellinger in maliciously prosecuting Pastor McCray for a crime he did not commit,

Pastor McCray has endured the most humiliating, demeaning, dehumanizing, and violating event

of his life.  He has suffered and will continue to suffer humiliation, embarrassment, injury to his

reputation, psychological pain, physical pain, suffering, mental anguish, fear, death threats,

trepidation, shock, attorney's fees, and other damages.

WHEREFORE, Plaintiff requests damages against Defendants Green, James and

Dellinger, jointly and severally, as follows:

A.  For Count I, compensatory damages in the amount of five million dollars

($5,000,000.00) and punitive damages in the amount of one million dollars ($1,000,000.00);

B. For Count II, compensatory damages in the amount of five million dollars

($5,000,000.00) and punitive damages in the amount of one million dollars ($1,000,000.00);

C.  For Count III, compensatory damages in the amount of five million dollars ($5,000,000.00) and punitive damages in the amount of three hundred fifty thousand dollars ($350,000.00);

D.  For costs and reasonable attorneys' fees; and

E.  For such further relief as this Court deems just and proper.

Respectfully submitted,

DR. PASTOR LEON KEITH McCRAY, SR.

By:  /s/ Carrol M. Ching
Counsel

John P. Fishwick, Jr., Esq. (VSB #23285)
John.Fishwick@fishwickandassociates.com
Carrol M. Ching, Esquire (VSB # 68031)
Carrol.Ching@fishwickandassociates.com
Daniel J. Martin, Esquire (VSB #92387)
Daniel.Martin@fishwickandassociates.com
Fishwick & Associates PLC
30 Franklin Road, Suite 700
Roanoke, Virginia 24011
(540) 345-5890 Telephone
(540) 343-5789 Facsimile

Chris K. Kowalczuk, Esq. (VSB #38108)
Ckkvalaw@gmail.com
P. O. Box 11971
Roanoke, VA 24022
(540) 345-0101 Telephone

*Counsel for Plaintiff*